UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BUSEY BANK, an Illinois Banking Corporation, ) ) ) Plaintiff, ) ) ) v. ) ) MICHAEL G. TURNEY, DAVID BESLER, ) MILISSA OMMEN-WELBORN, RANDALL ) CLARK, BARBARA WEIDNER, KIRK ) TJERNAGEL, RON BRISCOE, SANDRA ) VICK, KEITH FRANK MOUIS, JOSEPH ) RILEY MONGIOVI, NICHOLAS W. ) VILLAREAL, BRADLEY DAVID GISH, ) KERI KIKTA, JEFFREY HOPPER, ) DEBORAH STOCH, and FLAGSTAR ) BANK, FSB, ) ) Defendants. ) | No. 21 C 2900 Judge Sara L. Ellis |

**OPINION AND ORDER**

On May 28, 2021, Plaintiff Busey Bank ("Busey") filed this lawsuit against fifteen of its former employees (collectively, the "Former Employee Defendants") and their new employer, Flagstar Bank, FSB ("Flagstar"). The Former Employee Defendants, all involved in the mortgage loan business, left Busey for Flagstar between July and October 2020. Busey alleges that Flagstar raided its employees and that, in conjunction with the Former Employee Defendants, is misusing Busey's proprietary and trade secret information.[1] Busey brings claims against all Defendants for unfair competition; misappropriation of trade secrets in violation of the Illinois Trade Secrets Act ("ITSA"), 765 Ill. Comp. Stat. 1065/1 *et seq.*, and the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(b); tortious interference with Busey's business

---

[1] Busey filed a parallel case against Flagstar and several other former employees in the Southern District of Indiana on June 4, 2021. *See Busey Bank v. Flagstar Bank, FSB*, No. 21 C 1526 (S.D. Ind.).

relationships and contracts; and civil conspiracy. Busey also alleges that the Former Employee Defendants violated the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq.*, breached their fiduciary duties, and acted as faithless servants so as to forfeit their right to compensation. For those Former Employee Defendants with signed employment agreements with Busey, Busey also brings a claim for breach of contract. Finally, Busey seeks to hold Flagstar liable for inducing the Former Employee Defendants to breach their fiduciary duties. Defendants, in three separate groups, filed motions to dismiss Busey's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Busey has not sufficiently alleged its DTSA claim and has agreed to withdraw the CFAA claim, Busey has not pleaded a sufficient basis for this Court's subject matter jurisdiction. Thus, the Court dismisses the complaint without prejudice and defers consideration of the state law claims.

## BACKGROUND[2]

### I. Busey and Its Efforts to Protect Its Confidential Information

Busey, a bank based in Illinois, provides banking and mortgage loan origination and refinancing services. Busey generates, maintains, and protects confidential information, including market studies and strategies, financial studies, sales programs and pricing strategies, mathematical models, computer programs, statistical methods and algorithms, and personal customer information. Busey spends substantial time, effort, and resources on developing its customer base, network, and confidential and proprietary technology and information.

Busey has adopted several policies that address the use of its systems and information. Its electronic resources acceptable use policy provides that Busey employees may not "[r]eveal

---

[2] The Court takes the facts in the background section from Busey's complaint and the exhibits attached thereto and presumes them to be true for the purpose of resolving Defendants' motions to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). The Court also considers exhibits Busey references in its responses. To the extent Busey failed to attach exhibits to their responses but filed them elsewhere, the Court has considered those exhibits as well.

or publicize confidential or proprietary information which includes, but is not limited to: financial information, confidential client information, marketing strategies and plans, databases and any information contained therein, client lists, computer software source codes, computer/network access codes, and business relationships." Doc. 1-12 ¶ 13. Busey's information security policy provides that authorized users may only use their privileged access for "appropriate, legitimate, business required functions of Busey" and act in a way that "maintains the confidentiality, integrity, and availability for all Busey information." *Id.* ¶ 14. The policy defines confidential information to include customers' "name and address, social security number/tax identification number, credit scores or history, account balance, account number, account status, common information gathered for identification purposes (i.e. driver's license number, mother's maiden name, birth date)." *Id.*

Additionally, some of the Former Employee Defendants signed participation agreements with Busey that included both confidentiality and non-solicitation provisions. Busey had agreements with the following Former Employee Defendants: Besler, Briscoe, Clark, Gish, Mongiovi, Mouis, Ommen-Welborn, Tjernagel, and Vick.[3] Villareal also had an agreement with Pulaski Bank ("Pulaski"), which he entered into in November 2015.[4] Villareal's agreement with Pulaski included similar non-solicitation, confidentiality, and non-disparagement provisions to those in Busey's participation agreements.

The participation agreements included the following confidentiality provision:

> Participant acknowledges that the nature of Participant's
> employment requires that Participant produce and have access to

---

[3] Exhibit K to the complaint consists of a one-page junior mortgage originator commission and incentive compensation plan, initialed by Weidner. Doc. 1-11 at 2. But this exhibit does not also include a participation agreement, and Busey does not argue that the provisions of the participation agreement apply to her.

[4] Busey indicates that Pulaski merged into Busey.

> records, data, trade secrets and information that are not available to the public ("Confidential Information") regarding First Busey Corporation and its subsidiaries and affiliates (collectively, "Busey"). Participant shall hold in confidence and not directly or indirectly disclose any Confidential Information to third parties unless disclosure becomes reasonably necessary in connection with Participant's performance of Participant's duties, or the Confidential Information lawfully becomes available to the public from other sources, or Participant is authorized in writing to disclose it or Participant is required to make disclosure by a law or pursuant to the authority of any administrative agency or judicial body. . . . All Confidential Information and all other records, files, documents and other materials or copies thereof relating to the business of Busey that Participant prepares or uses shall be the sole property of Busey.

Doc. 1-1 at 12. The agreements also limited the use of Busey computer systems and networks to "legitimate business purposes on behalf of Busey," providing that "any other access to or use of such systems, network and equipment is without authorization and is prohibited." *Id.* Per the agreements, employees could not "transfer any Busey information to any personal computer or other electronic device that is not otherwise used for any business purpose relating to Busey" and were to "promptly return all originals and copies of any Confidential Information and other records, files, documents and other materials to Busey" upon the termination of their employment. *Id.*

Additionally, the participations agreements included a non-solicitation covenant:

> As an essential ingredient and in consideration of Participant's participation in the Plan, Participant shall not, for a period of twelve (12) months after termination of Participant's employment with Busey for any reason (the "Restrictive Period"), directly or indirectly do any of the following (the "Restrictive Covenant"):
>
> (a) for himself or herself or any person, firm, partnership, corporation, trust or other entity that owns or operates, a bank, savings and loan association, credit union, wealth management or investment advisory firm or similar financial institution (a "Financial Institution"): (i) induce or attempt to induce any officer of Busey, or any employee who previously reported to Participant, to leave the employ of Busey; (ii) in any way interfere with the

4

       relationship between Busey and any such officer or employee;
(iii) employ, or otherwise engage as an employee, independent contractor or otherwise, any such officer or employee; or
(iv) induce or attempt to induce any customer, supplier, licensee or business relation of Busey to cease doing business with Busey or in any way interfere with the relationship between Busey and any of its customers, suppliers, licensees or business relations, where Participant had personal contact with, or has accessed Confidential Information in the preceding twelve (12) months with respect to, such customers, suppliers, licensees, or business relations; or

       (b) for himself or herself or any Financial Institution, solicit the business of any person or entity known to Participant to be a customer of Busey, where Participant, or any person reporting to Participant, had personal contact with such person or entity, with respect to products, activities or services that compete in whole or in part with the products, activities or services of Busey.

*Id.* at 13. Finally, employees agreed not to "make any disparaging remarks about Busey or in any way demean the reputation of Busey or its employees, products or services" after the termination of the participant's employment. *Id.*

## II.    Mass Exodus of Busey Employees to Flagstar

In 2020, twenty-one Busey employees, spread across six offices in Indiana and Illinois, left Busey for Flagstar, a Michigan bank with offices in Illinois, Indiana, Michigan, Ohio, and Wisconsin. These include the Former Employee Defendants, who all worked for Busey in Illinois, as well as Christa A. Smith, Casey Joanne-Elaine Wilson, Kimberly Ann Sannella, Kyle R. Bernfield, Mark Thomas Dietrich, and Kellie Maria LaMonaca (the "Related Individuals"), who worked for Busey in Indiana. Following the mass resignations, Busey's North Veterans Bloomington office, Yorkville mortgage office, Downtown Naperville office, Plainfield office, and Homer Glen office, as well as the Carmel, Indiana mortgage suite, had no remaining employees. Busey incurred additional costs to recruit, hire, and train new employees to restaff these offices. Flagstar had no mortgage presence in Illinois until the Former Employee Defendants joined it.

5

Turney worked for Busey from November 9, 2016 to August 25, 2020 as a senior vice president in its mortgage sales division. Turney had access to Busey's client records. Turney directly supervised many of the other Former Employee Defendants and Related Individuals. Beginning in June 2020, while still working for Busey, Turney worked with Flagstar to recruit the other Former Employee Defendants and Related Individuals to Flagstar. Specifically, Turney requested recruitment materials from a Flagstar representative and then, with that representative, held a WebEx conference in June 2020 during business hours with other Busey employees, soliciting them to join Flagstar and work under him. On June 17, LaMonaca forwarded information about Flagstar, including benefits, to Tjernagel. Turney organized another WebEx meeting on June 23, 2020 with Flagstar employees and other Busey employees. Those copied on the meeting invitation included Gish, Mouis, Villareal, Mongiovi, and Tjernagel. Turney also began setting up information calls with other Busey employees in the Bloomington office in July 2020, after which some of the Former Employee Defendants and Related Individuals began resigning. Some of those invited to the follow up meetings included Clark, Briscoe, Besler, Ommen-Welborn, and Vick. Briscoe also sent Turney his resume on July 22. To convince the other Busey employees to leave for Flagstar, Turney misrepresented facts about Busey's intention to continue in the mortgage business, stating that Busey planned to leave the mortgage business and that it would not need as many mortgage lenders in the near future. A day after Busey approached Turney concerning reports that he had been soliciting employees to leave Busey for Flagstar, Turney resigned on August 25, 2020. Many of the other Former Employee Defendants followed suit shortly thereafter. Turney took on the role of Area Manager at Flagstar and has continued to manage many of the other Former Employee Defendants and Related Individuals there.

As for the other Former Employee Defendants, Villareal and Weidner were the first to resign from Busey on July 24, 2020. Hopper followed on August 22, 2020. Tjernagel and Mongiori resigned on August 28, 2020, followed the next day by Kikta and Stoch. Gish left Busey on September 1, 2020, and Mouis left on September 4, 2020. The last group—consisting of Besler, Briscoe, Clark, Ommen-Welborn, and Vick—resigned from Busey on October 23, 2020. After leaving Busey, all of the Former Employee Defendants and Related Individuals joined Flagstar. Flagstar has also continued to solicit Busey employees, using personal contact information that Turney provided to Flagstar.

The Former Employee Defendants and Related Individuals took Busey's confidential information with them to Flagstar. For example, on July 24, 2020, the day that Weidner resigned, LaMonaca emailed Gish's client list, containing confidential information on over fifty Busey customers, including their contact information, loan details, interest rates, and credit scores, to Weidner, who was Gish's assistant. On August 25, 2020, several days before his resignation, Tjernagel emailed himself documents including closing lists, purchase matrices, and closed loan commissions. These documents included information regarding loans, customer names, closing dates, interest rates, and payment status. In the month before their resignation, Besler and Ommen-Welborn emailed themselves similar documents including customer loan information, and Ommen-Welborn also emailed herself a PowerPoint presentation concerning Busey's mortgage loan programs.

A number of the Busey customers listed in these documents have since had loans serviced at Flagstar. As of the filing of the complaint in May 2021, the Former Employee Defendants and Related Individuals had solicited and transferred over 1,100 loan payoffs, totaling over $100 million, from Busey to Flagstar. Additionally, at the time the Former

Employee Defendants left Busey, they had a number of loans in the pipeline, which ultimately originated through Flagstar.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

In its complaint, Busey brought two federal claims, for violation of the DTSA and the CFAA, as well as a number of state law claims. Because Busey and the Former Employee Defendants are all Illinois citizens, Busey cannot rely on diversity jurisdiction as the basis for subject matter jurisdiction and instead contends that the Court has original jurisdiction over the federal claims and supplemental jurisdiction over the state law claims. In response to the Supreme Court's decision addressing the CFAA in *Van Buren v. United States*, --- U.S. ----, 141 S. Ct. 1648 (2021), Busey has agreed to withdraw its CFAA claim (Count V). This leaves the DTSA claim as the only jurisdictional hook for proceeding in federal court. Therefore, before

addressing any other arguments for dismissal, the Court considers whether Busey has adequately alleged a DTSA claim.

I.  **DTSA Claim (Count IV)**

The DTSA, 18 U.S.C. § 1836, creates a private cause of action for "an owner of a trade secret that is misappropriated . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). Because the DTSA, enacted in 2016, closely tracks the ITSA, the Court looks to the ITSA for guidance. *See Aon Risk Servs. Cos. v. Alliant Ins. Servs., Inc.*, 415 F. Supp. 3d 843, 847–48 (N.D. Ill. 2019); *Molon Motor & Coil Corp. v. Nidec Motor Corp.*, No. 16 C 03545, 2017 WL 1954531, at *3 (N.D. Ill. May 11, 2017). To state an ITSA violation, Busey must allege that information was (1) a trade secret; (2) misappropriated; and (3) used in the defendant's business. *UTStarcom, Inc. v. Starent Networks, Corp.*, 675 F. Supp. 2d 854, 864 (N.D. Ill. 2009).

A.  **Existence of a Trade Secret**

Initially, Turney argues that Busey has not adequately alleged the existence of a trade secret. The DTSA defines a trade secret as business-related information that the owner of which has taken reasonable measures to keep secret and from which the owner derives economic value from the information not being generally known or readily ascertainable by others who could gain an economic advantage from the information. 18 U.S.C. § 1839(3). The ITSA similarly defines a trade secret as:

> information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or supplies, that: (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are

9

> reasonable under the circumstances to maintain its secrecy or confidentiality.

765 Ill. Comp. Stat. 1065/2(d).

For a DTSA or ITSA claim to survive a motion to dismiss, a complaint need only identify the alleged trade secret in a general sense. *See, e.g.*, *Wells Lamont Indus. Grp. LLC v. Richard Mendoza & Radians, Inc.*, No. 17 C 1136, 2017 WL 3235682, at *3 (N.D. Ill. July 31, 2017) (allegation that the defendant "was exposed to confidential information such as customer account information, product summaries, pricing sheets, product prototypes, product designs, and detailed sales reports" sufficed at the pleading stage). To determine whether a trade secret exists, Illinois courts generally look to:

> (1) the extent that the information is known outside of the business; (2) the extent that the information is known to employees and others within the business; (3) the measures taken to protect the information from outsiders; (4) the value of the information to competitors; (5) the amount of time, money, and effort to develop the information; and (6) the ease that the information could be acquired by others.

*UTStarcom, Inc.*, 675 F. Supp. 2d at 865 (citing *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 722 (7th Cir. 2003)). "Where an employer has invested substantial time, money, and effort to obtain a secret advantage, the secret should be protected from an employee who obtains it through improper means." *Von Holdt v. A-1 Tool Corp.*, No. 04 C 04123, 2013 WL 53986, at *11 (N.D. Ill. Jan. 3, 2013). Ultimately, a plaintiff "must prove that the real value of the information lies in the fact that it is not generally known to others who could benefit from using it." *Id.*

Here, Turney argues that customers' names and personal contact information cannot constitute trade secrets. Customer lists "can warrant protection as trade secrets" but the lists must be "sufficiently secret" and must have taken "considerable effort, time, and resources" to

build. *Fleetwood Packaging v. Hein*, No. 14 C 09670, 2015 WL 6164957, at *3 (N.D. Ill. Oct. 20, 2015). However, customer information does not warrant protection if it is "generally available to employees, known by persons in the trade, or easily found in telephone directories and industry directories." *Chicagoland Aviation, LLC v. Todd*, No. 12cv1139, 2012 WL 5948960, at *5 (N.D. Ill. June 8, 2012). Here, while information about other Busey employees' contact information may have been readily available and thus does not merit trade secret protection, the complaint alleges that the customer lists that the Former Employee Defendants allegedly took with them to Flagstar included detailed information not generally available to the public and which Busey claims took considerable time and effort to compile. *See Strata Mktg., Inc. v. Murphy*, 317 Ill. App. 3d 1054, 1069 (2000) ("Strata's customer lists, which it alleged take considerable effort, time, and money to compile, could be deemed a trade secret and sufficiently secret to derive economic value."). This suffices at this stage to suggest the existence of a trade secret.[5]

### B. Misappropriation

Next, Defendants argue that Busey has not adequately alleged misappropriation. Misappropriation under the DTSA includes the "acquisition of a trade secret of another . . . by improper means" and "disclosure or use of a trade secret of another without express or implied consent" under certain conditions. 18 U.S.C. § 1839(5). Similarly, under the ITSA, a plaintiff can show "misappropriation" in one of three ways: "improper acquisition, unauthorized disclosure, or unauthorized use." *Traffic Tech, Inc. v. Kreiter*, No. 14-cv-7528, 2015 WL

---

[5] In a footnote, Turney also argues that the complaint does not include allegations to show that Busey took adequate measures to protect its alleged trade secrets. But the Court need not address undeveloped arguments raised in footnotes. *See Harmon v. Gordon*, 712 F.3d 1044, 1053 (7th Cir. 2013) ("[A] party can waive an argument by presenting it only in an undeveloped footnote."); *Schrock v. Learning Curve Int'l, Inc.*, 744 F. Supp. 2d 768, 770 n.1 (N.D. Ill. 2010) ("Undeveloped arguments and arguments raised in footnotes are waived.").

11

9259544, at *12 (N.D. Ill. Dec. 18, 2015) (citing 765 Ill. Comp. Stat. 1065/2(b), and collecting cases).

Busey alleges that Defendants misappropriated its trade secrets by unauthorized disclosure and use, which "requires a defendant to use the alleged trade secrets or disclose them to others 'for purposes other than serving the interests of' the owner of the trade secrets."[6] *Id.* (quoting *Instant Tech, LLC v. DeFazio*, 40 F. Supp. 3d 989, 1015–16 (N.D. Ill. 2014)). Defendants argue, however, that Busey improperly relies on allegations based on information and belief to support its claim that Defendants have used Busey's customer lists to solicit customers for Flagstar. "A complaint may make allegations upon information and belief where the facts are inaccessible to the plaintiff, but it must also plead reasonable grounds for its suspicions." *Indus. Packaging Supplies, Inc. v. Channell*, No. 18 CV 165, 2018 WL 2560993, at *2 (N.D. Ill. June 4, 2018). Busey argues that it may plead misappropriation on information and belief because Defendants are uniquely in possession of the facts concerning the alleged misappropriation. Defendants, on the other hand, argue that Busey has had sufficient time to determine whether the Former Employee Defendants took and used any trade secrets.

Here, Busey has attached to its complaint printouts of emails that Tjernagel sent to himself at his work emails, Weidner received at her work email, Ommen-Welborn sent to a personal email address, and Besler sent to himself,[7] all of which include customer lists as

---

[6] Busey does not argue that it may proceed on these claims under a theory of inevitable disclosure, nor does it allege that Defendant acquired any trade secrets through improper means. Thus, the Court does not discuss whether the complaint would allow Busey to proceed under these theories.

[7] The Court cannot determine from the exhibit attached to the complaint whether Besler sent the email to himself at his work or personal email address.

12

attachments.[8] The complaint and exhibits do not otherwise suggest that any of the other Former Employee Defendants took any Busey documents with them upon leaving Busey. Given Busey's investigation and discovery of the Besler, Ommen-Welborn, Tjernagel, and Weidner emails, the Court does not find plausible Busey's unsupported suspicion that any of the other Former Employee Defendants took Busey's customer lists when they left Busey. But even assuming that all of the Former Employee Defendants took Busey's customer lists with them, "mere possession of trade secrets does not suffice to plausibly allege disclosure or use of those trade secrets, even when considered in conjunction with solicitations of former clients." *Packaging Corp. of Am., Inc. v. Croner*, 419 F. Supp. 3d 1059, 1066 (N.D. Ill. 2020); *see also Channell*, 2018 WL 2560993, at *2 ("Industrial Packaging has alleged that Channell and other Axis employees used to work at Industrial Packaging, where they had access to its trade secrets and that Axis offers the same services and targets the same clients as Industrial Packaging. But this is not enough to justify its otherwise unsupported suspicions that the defendants used or disclosed the information they had access to while working for Industrial Packaging."). Nor do Busey's allegations that it has lost business to Flagstar further its claim that Defendants have misappropriated Busey's trade secrets. *See Croner*, 419 F. Supp. 3d at 1069 ("[L]ost business alone is not enough to support a claim of trade secret misappropriation, and PCA must adequately allege that Croner has done more than legally compete in the normal course of business."). Without more, Busey cannot proceed on its DTSA claim, which the Court dismisses without prejudice.[9]

---

[8] The complaint also includes as an exhibit emails that Dietrich, one of the Related Individuals, sent to his personal email address, but because Dietrich is not a defendant in this case, the Court does not discuss him further.

[9] Because DTSA and ITSA claims follow the same analysis, Busey's ITSA claim also fails to state a claim.

## II. Supplemental State Law Claims

Busey also brings numerous state law claims against Defendants, which it contends that the Court has supplemental jurisdiction over pursuant to 28 U.S.C. § 1367. But because the Court dismisses the DTSA and CFAA claims over which it has original jurisdiction at this time, the Court declines to exercise supplemental jurisdiction over Busey's state law claims. *See* 28 U.S.C. § 1367(c); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial."). The Court therefore dismisses the state law claims against Defendants without prejudice and defers consideration of Defendants' arguments for dismissal of these claims until Busey adequately alleges a basis for the Court's subject matter jurisdiction.[10]

## CONCLUSION

For the foregoing reasons, the Court grants in part Defendants' motions to dismiss [32, 36, 60]. The Court dismisses the complaint without prejudice and defers consideration of the state law claims until Busey pleads a sufficient basis for subject matter jurisdiction. Because the dismissal is without prejudice, the Court grants Busey until February 11, 2022 to file an amended complaint

Dated: January 10, 2022

SARA L. ELLIS
United States District Judge

---

[10] Although the Court dismisses Busey's DTSA claim without prejudice, allowing Busey leave to file an amended complaint, the Court encourages Busey to carefully consider the arguments Defendants made for dismissal of the state law claims and address any potential pleading deficiencies related to the state law claims in an amended complaint. Among other things, Busey should consider whether it has a sufficient basis to proceed against each of the Former Employee Defendants, and, to the extent it does decide to proceed against any of them, it should take care to clearly set forth allegations of each Defendants' specific actions that support their liability on each claim it pursues in the amended complaint.

14